UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

LAWRENCE GAMBLE,
         Defendant.

Criminal No. 19-348 (CKK)

**MEMORANDUM OPINION**
(December 17, 2019)

Pending before the Court is Defendant Lawrence Gamble's Motion to Revoke Detention Order, ECF No. 21. Mr. Gamble previously opposed his detention at the preliminary detention hearing and further filed a motion for reconsideration of the decision to detain him. He now challenges his detention for a third time and requests that this Court order his release on appropriate conditions. Upon consideration of the parties' submissions,[1] relevant legal authorities, and the record as a whole, the Court shall **DENY** Mr. Gamble's Motion.

## I. BACKGROUND

The Indictment charges Mr. Gamble with three counts: conspiracy to obstruct justice under 18 U.S.C. 1512(c)(1), (c)(2), (k); obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), (c)(2); and obstruction of enforcement of 18 U.S.C. § 1591 (which prohibits sex trafficking of children by force, fraud, or coercion) in violation of 18 U.S.C. § 1591(d). Indictment, ECF No.

---

[1] The Court's consideration has focused on:
- Def.'s Mot. to Revoke Detention Order ("Def.'s Mot. to Revoke"), ECF No. 21; and
- Government's Opp'n to Def.'s Mot. to Revoke the Detention Order ("Gov.'s Opp'n"), ECF No. 23.

The Court has also considered, as appropriate, other materials in the record. This includes the previous orders relating to Mr. Gamble's pretrial detention, the briefing underlying those orders, and the letter filed by Gunnery Sergeant Anthony Baze in support of Mr. Gamble, ECF No. 22.

1

17. Mr. Gamble was first arrested on May 17, 2019. *See* Complaint, ECF No. 1; May 17, 2019 Arrest Warrant, ECF No. 4. Magistrate Judge G. Michael Harvey held a preliminary detention hearing on May 21 and May 22, 2019. *See* May 21, 2019 and May 22, 2019 Minute Orders. Magistrate Judge Harvey found that Mr. Gamble had not rebutted the presumption of dangerousness and that the relevant factors weighed heavily against his release; he therefore ordered Mr. Gamble detained prior to trial. *See* May 31, 2019 Detention Memorandum ("First Detention Order"), ECF No. 7.

Mr. Gamble then moved to reconsider Magistrate Judge Harvey's Pretrial Detention Order on September 6, 2019. Def.'s Mot. to Recons. Pretrial Detention Order, ECF No. 13. He contested that he presented a danger to the community. *Id.* at 5. Magistrate Judge Harvey held a hearing on this motion on September 27, 2019 and denied Mr. Gamble's motion. *See* Sept. 27, 2019 Minute Order. As the magistrate judge explained in the relevant Minute Order, Mr. Gamble largely reiterated his prior arguments and advanced only one new argument that Mr. Gamble had a possibility of employment if he was released. *See* Sept. 30, 2017 Minute Order ("Second Detention Order"). However, this did not change the magistrate judge's conclusion that Mr. Gamble posed a danger to the community due to the nature of his charges, and the new evidence accordingly did not change the magistrate judge's initial determination. *See id.* Mr. Gamble now challenges his pretrial detention for a third time.

In his current Motion, Mr. Gamble does not appear to contest the evidence presented at the preliminary detention hearing held in front of Magistrate Judge Harvey, other than to discount the credibility of the witnesses because "the testimony against Mr. Gamble was given under immunity and that at least one of the witnesses lied." Def.'s Mot. to Revoke at 2. The Court addresses these

concerns below. Otherwise, as Mr. Gamble does not contest the findings of fact made by the magistrate judge, the Court will incorporate and repeat certain of those findings here.

In short, Mr. Gamble's case is related to another case in this Court in which Rodregiz Antwon Cole is charged with the sex trafficking of a child by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a). When law enforcement executed a search warrant on Mr. Cole's residence on April 11, 2019, they found Mr. Gamble and one of the witnesses, Witness 1, standing near a Toyota Avalon that belonged to Mr. Gamble and was parked outside the residence. First Detention Order at 3. Mr. Gamble and others appeared to be packing Mr. Cole's belongings into the Avalon. *Id.* Mr. Gamble gave permission for the vehicle to be searched. *Id.* Inside the vehicle, law enforcement found bags that contained items with evidentiary value. *Id.* This included "pimp-related clothing and other items, such as a pimp cup and a 2018 Pimp of the Year trophy." *Id.* (internal quotation marks omitted). It also contained vehicle tags for a gray Lexus registered to Witness 1 that was also parked outside the residence. *Id.* Investigators later discovered that Mr. Gamble had called a tow track to remove the Lexus and a BMW also parked in front of the residence. *Id.*

Investigators also found a critical piece of evidence in the Avalon: A sonogram "was found in the center console of Defendant's Toyota Avalon." *Id.* The sonogram is important because it contained the true name and birth date of a woman referred to as K.M., who represented herself as an underage victim of sex trafficking when she was stopped by local law enforcement on April 5, 2019. *Id.* at 2. When interviewed by law enforcement at the scene, Mr. Gamble denied putting Mr. Cole's property in his car and denied any knowledge of the sonogram. *Id.* at 3.

Witness 1, who was a childhood friend of Mr. Cole's and who had a child by him, began cooperating in return for immunity the same day. *Id.* Witness 1 explained that Mr. Cole had called

her to remove his property from his residence in Baltimore and to enlist the help of Mr. Gamble, whom she understood to be a close friend of Mr. Cole's. *Id.* at 3–4. Call records demonstrate that Witness 1 first communicated with Mr. Gamble on April 7, 2019, and spoke with him again on April 8, 2019. *Id.* at 4. Witness 1 also stated that Mr. Gamble "told her about the sonogram, when in an early phone conversation he said that he had gone to the Baltimore residence in part to look for the document." *Id.* She denied ever seeing the sonogram or having knowledge about it being in Mr. Gamble's Avalon. *Id.* In fact, in a recorded call on April 9, 2019, Witness 1 asked Mr. Cole about the sonogram and stated that Mr. Gamble had told her about it. *Id.*

Another witness, Witness 2, also cooperated in return for immunity. *Id.* at 5. Witness 2 identified herself as a prostitute for Mr. Cole who had shared a bedroom with K.M. *Id.* Witness 2 explained that she and Witness 3 had gone to the Baltimore residence to look for K.M. *Id.* After they returned, Witness 3 allowed three men, including Mr. Gamble, into the residence. *Id.* Mr. Gamble ordered Witness 2 and Witness 3 "to give him the money they had made that morning, pack their belongings, and leave." *Id.*

The magistrate judge also found that Mr. Gamble had one prior felony conviction for attempted robbery from 2006 and a series of misdemeanors and other violations, including for marijuana possession and driving without a license. *Id.*

## II. LEGAL STANDARD

Under the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, if a judicial officer finds after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," that officer "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Here, Magistrate Judge Harvey found that Mr. Gamble rebutted the presumption as to risk of flight. The Court

4

agrees with Magistrate Judge Harvey's reasoning and conclusion on this point and adopts them here. Consequently, the Court must only consider whether the "safety of any other person and the community" can be assured. *See id.* There must be "clear and convincing" evidence of dangerousness to support a finding under this prong. *Id.* § 3142(f). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

"That default is modified, however, for certain, particularly dangerous defendants." *Id.* The Act creates a rebuttable presumption of dangerousness if "there is probable cause to believe that the" defendant committed, for instance, "an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed." 18 U.S.C. § 3142(e)(3)(D). A grand jury indictment alone is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). The Indictment against Mr. Gamble charges him with a violation of 18 U.S.C. § 1591(d), ECF No. 17 at 2, which, as Magistrate Judge Harvey found, ECF No. 7 at 6, is an offense under title 77 that carries a maximum term of imprisonment of 25 years, *see* 18 U.S.C. § 1591(d). Mr. Gamble therefore faces a rebuttable presumption of dangerousness.

"[T]he presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). "While the burden of production may not be heavy," the defendant must still introduce some evidence. *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."); *United States v. Portes*,

5

786 F.2d 758, 764 (7th Cir. 1985) (explaining that presumption is "rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released" (internal quotation marks omitted) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, the defendant must present "all the special features of his case that take it outside the congressional paradigm[.]" *Stone*, 608 F.3d at 946 (internal quotation marks omitted) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)).

"The defendant's burden, moreover, is only a burden of production; the burden of persuasion remains with the government throughout the proceeding." *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Still, "the presumption is not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Id.* (quoting *Jessup*, 757 F.2d at 382). "The presumption does 'not vanish upon the introduction of contradicting evidence,'" but instead the judicial officer must consider Congress's conclusion that defendants charged with these offenses are "likely to pose a danger to the community." *Id.* (quoting *Jessup*, 757 F.3d at 383); *see also United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) ("[T]he presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.").

In addition to the presumption, the Court must also examine the available information that touches upon the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g). A magistrate judge's detention order that is challenged under 18 U.S.C. § 3145(b) is subject to *de*

*novo* review. *See United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017) ("Finally, although the D.C. Circuit has not yet addressed the issue, the many circuits that have agree that the district judge should review *de novo* a detention decision rendered by a Magistrate Judge.").

## III. DISCUSSION

Mr. Gamble challenges the magistrate judge's determination that he failed to rebut the presumption of dangerousness and the magistrate judge's application of the factor test. The Court therefore considers whether Mr. Gamble has rebutted the presumption and each of the four relevant factors under 18 U.S.C. § 3142(g).

First, the Court agrees with the magistrate judge's conclusion that Mr. Gamble has not come forward with sufficient evidence to rebut the presumption of dangerousness. At the preliminary detention hearing, Mr. Gamble primarily questioned the Government's evidence. First Detention Order at 7–8. Mr. Gamble argues now, and apparently argued then, that this evidence is not to be relied upon because the witnesses cooperated pursuant to an immunity agreement and because Witness 1 initially lied to law enforcement regarding the timing of her arrival in the Washington, D.C. area. *See* Def.'s Mot. to Revoke at 2 (claiming that magistrate judge found evidence was strong "despite the fact that the testimony against Mr. Gamble was given under immunity and that at least one of the witnesses lied"); *see also* First Detention Order at 8 (acknowledging that Witness 1 lied about this specific fact).

The magistrate judge in fact noted that Witness 1 had lied about these details and that she was cooperating pursuant to an immunity agreement. First Detention Order at 8. Rather than dismiss this, however, the magistrate judge found that the other evidence supported her testimony. *See id.* Upon review of the record and uncontested findings of fact, this Court agrees with that determination. The calls between Mr. Cole and Witness 1 that were recorded support that Mr.

7

Cole asked Witness 1 to remove his property from the Baltimore residence.  Moreover, the April 9, 2019 call between Mr. Cole and Witness 1 corroborates that she told Mr. Cole that Mr. Gamble had informed her about the critical sonogram.  Mr. Gamble knew that Mr. Cole operated as a pimp is also supported by Witness 2's statement that Mr. Gamble asked for and collected the money that she and Witness 3 had made that morning.  The primary assertion that Mr. Gamble has apparently put forth is that he was cleaning out Mr. Cole's residence because Mr. Cole was being evicted.  *See id.* at 8 (finding same).  However, the statements from Witness 1 and the recorded phone calls significantly undercut that argument.  Nor did Mr. Gamble assert that this was the case when he was initially interviewed by law enforcement.  *See id.* (finding same).

The only new evidence or argument that Mr. Gamble has presented related to his current Motion is a letter from Gunnery Sergeant Anthony Baze, ECF No. 22.  In the letter, Gunnery Sergeant Baze explains that Mr. Gamble has been his mentor, attests to Mr. Gamble's character, and expresses his belief that Mr. Gamble is not a threat to society.  *See id.*  This letter ultimately does not act to rebut the presumption, although it does inform the Court's below analysis regarding Mr. Gamble's character.  While this letter speaks to Mr. Gamble's character, it is insufficient to undermine the strong evidence presented by the Government supporting the presumption of dangerousness.  Mr. Gamble has produced no additional evidence to this Court that the magistrate judge did not previously consider or that is not apparent in the record.  Accordingly, review of the record therefore demonstrates that he has not put forward sufficient evidence to rebut the presumption of dangerousness that attached when he was charged with a violation of 18 U.S.C. § 1591(d).

Mr. Gamble also challenges the magistrate judge's application of the four-factor test, which a judicial officer must consider along with the presumption.  *See* 18 U.S.C. § 3142(g); *see also*

*Dominguez*, 783 F.2d at 707 ("[T]he rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."); *Taylor*, 289 F. Supp. 3d at 63 ("Rather, even after a defendant carries his burden of persuasion, the judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)). As explained above, the presumption weighs heavily in favor of detention here.

The first factor under Section 3142(g) is "the nature and circumstances of the offense charged, including whether the offense is . . . a violation of section 1591." 18 U.S.C. § 3142(g)(1). The Court therefore considers the nature of the offenses that Mr. Gamble has allegedly committed. *Cf.* S. Rep. 98-225, 22, 1984 U.S.C.C.A.N. 3182, 3205 ("[I]f the dangerous nature of the current offense is to be a basis of detention, then there should be evidence of the specific elements or circumstances of the offense, such as possession or use of a weapon or threats to a witness, that tend to indicate that the defendant will pose a danger to the safety of the community if released.").

Mr. Gamble has been charged with a violation of section 1591(d), which proscribes obstruction of enforcement of 18 U.S.C. § 1591, which itself prohibits sex trafficking of children by force, fraud, or coercion. *See* 18 U.S.C. § 1591. Congress's opinion of the seriousness of this crime is evidence in the maximum sentence, which is twenty-five years imprisonment. *See id.* § 1591(d). He has also been charged with conspiracy to obstruct justice and obstruction of justice in violation of 18 U.S.C. 1512(c)(1), (c)(2), and (k), which also impose serious sentences of up to twenty years imprisonment, *see* 18 U.S.C. § 1512(c), (k). The Bail Reform Act specifically lists a violation of Section 1591, which again prohibits sex trafficking of minor children by force, fraud or coercion, as an offense that is particularly concerning, and the Court finds that Mr. Gamble has

9

presented nothing that distinguishes this case. *See United States v. Epstein*, No. 19 CR. 490 (RMB), 2019 WL 3229190, at *7 (S.D.N.Y. July 18, 2019) (finding that crimes, including violations of Section 1591, "are among the most heinous in the law principally, in the Court's view, because they involve minor girls" and finding nature of offense factor weighed in favor of detention), *appeal withdrawn*, No. 19-2221, 2019 WL 5390016 (2d Cir. Aug. 21, 2019); *United States v. McGaughy*, No. 18-CR-20206, 2019 WL 4784780, at *4 (E.D. Mich. Oct. 1, 2019) (finding that "Congress found it to be especially significant in the dangerousness analysis if charges against Defendant include" a violation of Section 1591 and finding factor weighed in favor of detention despite "absence of dangerous weapons and evidence that anyone feared Defendant's release").

The second factor is "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). As the Court discussed above when discussing the presumption, the weight of the evidence is currently against Mr. Gamble. Mr. Gamble has yet to present any evidence that would change the balance of that evidence.

The third factor is "the history and characteristics of the person." *Id.* § 3142(g)(3). This includes "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *Id.* § 3142(g)(3)(A). Mr. Gamble has only a slight criminal history, with one felony for armed robbery in 2006. Especially in light of the letter from Gunnery Sergeant Baze, the Court agrees with the magistrate judge's finding that this factor does not weigh in favor of detention.

Lastly, the fourth factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.* § 3142(g)(4). The magistrate judge

found that because Mr. Gamble is charged with obstruction of justice, this factor weighs in favor of Mr. Gamble being detained. First Detention Order at 11. In particular, the First Detention Order explains that because Mr. Gamble "was willing to help his friend Mr. Cole obstruct justice," that there was "no confidence that he would not do the same for himself were he to be released." *Id.* In his current Motion, Mr. Gamble's primary challenge is to the application of this factor. The cases relied upon by the magistrate judge, Mr. Gamble claims, are inapposite. These cases are *United States v. Manafort*, 897 F.3d 340, and *United States v. Zherka*, 592 F. App'x 35 (2d Cir. 2015). Mr. Gamble, however, misreads the magistrate judge's opinion. The magistrate judge does not advance that those cases are analogous; instead, he relied upon them for his assertion that obstruction of justice poses a danger to the community. *See* First Detention Order at 11; *see also Manafort*, 897 F.3d at 344–45 ("The [trial] court reasoned that the witness-tampering charges indicate that Appellant poses a danger to the safety of the community through 'harm to the administration of justice; harm to the integrity of the courts.'"); *Zherka*, 592 F. App'x at 36 ("Zherka is a danger to the community by reason of prior instances of violence (and more recent boasts about that violence), as well as a history of obstruction of justice[.]").

Regardless, the Court agrees that this factor weighs in favor of detention. To begin with, obstruction of justice does pose a serious danger to the community as contemplated under Section 3142(g)(4). Indeed, "obstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000) (citing cases and finding that there do not need to be "violence or threats aimed against witnesses" for there to be danger to community); *see also United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986) (concluding that recent witness tampering in another proceeding was sufficient to justify pretrial detention); *United*

11

*States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013) ("Danger to community may include non-violent propensities, such as a record of obstruction of justice."). While Mr. Gamble does not have an extensive history of obstruction of justice, the weight of the evidence presented by the Government supports that he has recently and in a related proceeding obstructed justice by attempting to, for instance, hide or conceal relevant evidence, which in turn presents a serious danger that he may do so again in his own case. This is especially relevant when the underlying crime, a violation of 18 U.S.C. § 1591 for sex trafficking of children, is considered to be so serious as to create a presumption of dangerousness under the Bail Reform Act, *see* 18 U.S.C. § § 3142(e)(3)(D). The serious nature of the crime, and the specific allegations regarding the obstruction of justice, distinguish this case from others in which the potential for further obstruction was found to not pose a danger. *See, e.g.*, *United States v. Khashoggi*, 717 F. Supp. 1048, 1051 (S.D.N.Y. 1989) (finding that fourth factor weighed against detention in case with obstruction charge related to less-serious crime of wire fraud). Accordingly, the presumption and the four factors still weigh in favor of detention.

## IV. CONCLUSION

For the foregoing reasons, the Court shall **DENY** Mr. Gamble's Motion to Revoke Pretrial Detention, ECF No. 21. An appropriate Order accompanies this Memorandum Opinion.

Dated: December 17, 2019

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

12