## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

LAWRENCE GAMBLE,
        Defendant.

Criminal No. 19-348 (CKK)

## MEMORANDUM OPINION
(February 6, 2020)

      Pending before the Court is Defendant Lawrence Gamble's Motion to Reconsider Order Denying Motion to Revoke Detention Order, ECF No. 28.  Mr. Gamble previously filed a Motion to Revoke Detention Order, ECF No. 21, which this Court denied, *see* Dec. 17, 2019 Order, ECF No. 24; Dec. 17, 2019 Mem. Op., ECF No. 25.  Mr. Gamble now asks this Court to reconsider its December 17, 2019 Order denying that Motion.  He also argues that his pretrial detention violates due process.  Upon consideration of the parties' submissions,[1] relevant legal authorities, and the record, the Court shall **DENY** Mr. Gamble's Motion.

---

[1] The Court's consideration has focused on the following:
- Def.'s Mot. to Reconsider Order Denying Mot. to Revoke Detention Order ("Def.'s Mot."), ECF No. 28;
- Gov't's Opp'n to Def.'s Mot. to Revoke the Detention Order ("Gov't Opp'n"), ECF No. 29;
- Reply Re: Mot. to Reconsider Denial of Def.'s Mot. to Revoke Detention Order ("Def.'s Reply"), ECF No. 30;
- Def.'s Resp. to Court Order ("Def.'s Suppl. Br."), ECF No. 32; and
- Gov't's Opp'n to Def.'s Mot. to Revoke the Detention Order (Substantive Due Process Suppl. Br.) ("Gov't Suppl. Br."), ECF No. 33.

The Court has also considered, as appropriate, other materials in the record.  This includes the previous orders relating to Mr. Gamble's pretrial detention and the briefing underlying those orders.

# I. BACKGROUND

The Court previously explained the relevant background in this case in its December 17, 2019 Memorandum Opinion, ECF No. 25.  The Court reincorporates that discussion and repeats much of it below.  While Mr. Gamble does not necessarily contest most of the below facts, he does highlight several other facts, which the Court also addresses further below.

## A. Factual Background

Mr. Gamble's case is related to another case in this Court in which Rodregiz Antwon Cole is charged with the sex trafficking of a child by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a).  When law enforcement executed a search warrant on Mr. Cole's residence on April 11, 2019, they found Mr. Gamble and one of the witnesses, Witness 1, standing near a Toyota Avalon that belonged to Mr. Gamble and was parked outside the residence.  May 31, 2019 Detention Memorandum ("First Detention Order"), ECF No. 7, at 3.  Mr. Gamble and others appeared to be packing Mr. Cole's belongings into the Avalon.  *Id.*  Mr. Gamble gave permission for the vehicle to be searched.  *Id.*  Inside the vehicle, law enforcement found bags that contained items with evidentiary value.  *Id.*  This included "pimp-related clothing and other items, such as a pimp cup and a 2018 Pimp of the Year trophy."  *Id.* (internal quotation marks omitted).  It also contained vehicle tags for a gray Lexus registered to Witness 1 that was also parked outside the residence. *Id.*  Investigators later discovered that Mr. Gamble had called a tow track to remove the Lexus and a BMW also parked in front of the residence.  *Id.*

Investigators also found a critical piece of evidence in the Avalon:  A sonogram "was found in the center console of Defendant's Toyota Avalon."  *Id.*  The sonogram is important because it contained the true name and birth date of a woman referred to as K.M., who represented herself as an underage victim of sex trafficking when she was stopped by local law enforcement on April 5,

2019.  *Id.* at 2.  When interviewed by law enforcement at the scene, Mr. Gamble denied putting Mr. Cole's property in his car and denied any knowledge of the sonogram.  *Id.* at 3.

Witness 1, who was a childhood friend of Mr. Cole's and who had a child by him, began cooperating in return for immunity the same day.  *Id.*  Witness 1 explained that Mr. Cole had called her to remove his property from his residence in Baltimore and to enlist the help of Mr. Gamble, whom she understood to be a close friend of Mr. Cole's.  *Id.* at 3–4.  Call records demonstrate that Witness 1 first communicated with Mr. Gamble on April 7, 2019, and spoke with him again on April 8, 2019.  *Id.* at 4.  Witness 1 also stated that Mr. Gamble "told her about the sonogram, when in an early phone conversation he said that he had gone to the Baltimore residence in part to look for the document."  *Id.*  She denied ever seeing the sonogram or having knowledge about it being in Mr. Gamble's Avalon.  *Id.*  In a recorded call on April 9, 2019, Witness 1 asked Mr. Cole about the sonogram and stated that Mr. Gamble had told her about it.  *Id.*

Another witness, Witness 2, also cooperated in return for immunity.  *Id.* at 5.  Witness 2 identified herself as a prostitute for Mr. Cole who had shared a bedroom with K.M.  *Id.*  Witness 2 explained that she and Witness 3 had gone to the Baltimore residence to look for K.M.  *Id.*  After they returned, Witness 3 allowed three men, including Mr. Gamble, into the residence.  *Id.*  Mr. Gamble ordered Witness 2 and Witness 3 "to give him the money they had made that morning, pack their belongings, and leave."  *Id.*  According to Witness 2, this money had been earned from prostitution, and so Mr. Gamble's requesting the money suggested that he was aware that Mr. Cole operated as a pimp.  *Id.* at 8.

B. Procedural Background

The Indictment, which was returned on October 11, 2019, charges Mr. Gamble with three counts: conspiracy to obstruct justice under 18 U.S.C. 1512(c)(1), (c)(2), (k); obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), (c)(2); and obstruction of enforcement of 18 U.S.C. § 1591 (which prohibits sex trafficking of children by force, fraud, or coercion) in violation of 18 U.S.C. § 1591(d). Indictment, ECF No. 17. Mr. Gamble was first arrested on May 17, 2019. *See* Complaint, ECF No. 1; May 17, 2019 Arrest Warrant, ECF No. 4. Magistrate Judge G. Michael Harvey held a preliminary detention hearing on May 21 and May 22, 2019. *See* May 21, 2019 and May 22, 2019 Minute Orders. At the hearing, he heard testimony from Detective Jeremiah Johnson, an officer with the Metropolitan Police Department. First Detention Order at 1. Magistrate Judge Harvey found that Mr. Gamble had not rebutted the presumption of dangerousness and that the relevant factors weighed heavily against his release; he therefore ordered Mr. Gamble detained prior to trial. *See id.* He also found that Mr. Gamble had one prior felony conviction for attempted robbery from 2006 and a series of misdemeanors and other violations, including for marijuana possession and driving without a license. *Id.*

Mr. Gamble then moved to reconsider Magistrate Judge Harvey's Pretrial Detention Order on September 6, 2019. Def.'s Mot. to Recons. Pretrial Detention Order, ECF No. 13. He contested that he presented a danger to the community. *Id.* at 5. Magistrate Judge Harvey held a hearing on this motion on September 27, 2019 and denied Mr. Gamble's motion. *See* Sept. 27, 2019 Minute Order. As the magistrate judge explained in the relevant Minute Order, Mr. Gamble largely reiterated his prior arguments and advanced only one new argument that Mr. Gamble had a possibility of employment if he was released. *See* Sept. 30, 2017 Minute Order ("Second Detention Order"). However, this did not change the magistrate judge's conclusion that Mr. Gamble posed

a danger to the community due to the nature of his charges, and the new evidence accordingly did not change the magistrate judge's initial determination. *See id.*

Mr. Gamble then asked that this Court revoke his pretrial detention on December 6, 2019. Mot. to Revoke Detention Order, ECF No. 21. The Court denied his motion. *See* Dec. 17, 2019 Order, ECF No. 24; Dec. 17, 2019 Mem. Op, ECF No. 25. At bottom, the Court found that Mr. Gamble had not overcome the presumption of dangerousness raised by the Indictment and that the other relevant factors, on balance, also weighed in favor of pretrial detention. Mr. Gamble now seeks reconsideration of that decision. He also argues that his detention violates due process. The Court, upon reviewing Mr. Gamble's instant motion, requested supplemental briefing from the parties on the due process issue. *See* Jan. 30, 2020 Order, ECF No 31. The parties promptly provided additional briefing on that issue.

## II. LEGAL STANDARDS

### A. Motion for Reconsideration of Interlocutory Decisions

"Although the Federal Rules do not specifically provide for motions for reconsideration in criminal cases, the Supreme Court has recognized, in *dicta*, the utility of such motions." *United States v. Ferguson*, 574 F. Supp. 2d 111, 113 (D.D.C. 2008) (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)). "This Court has adopted such a philosophy by regularly entertaining motions for reconsideration in a criminal context, applying the analogous Federal Rules of Civil Procedure." *In re Extradition of Liuksila*, 133 F. Supp. 3d 249, 255 (D.D.C. 2016); *see also United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (listing cases applying standards from Federal Rules of Civil Procedure in reconsideration context).

The Court's decision to deny Defendant's initial Motion to Revoke Pretrial Detention was an interlocutory decision. As it has before, the Court again shares the view in this district that a

motion to reconsider an interlocutory decision may be granted "as justice requires." *See, e.g.,*
*Coulibaly v. Tillerson*, 278 F. Supp. 3d 294, 301 (D.D.C. 2017) (Contreras, J.); *United States v.*
*Dynamic Visions, Inc.*, 321 F.R.D. 14, 17 (D.D.C. 2017) (Kollar–Kotelly, J.); *Sunia*, 643 F. Supp.
2d at 60–61; *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)
(Lamberth, J.) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (Lamberth, J.)). The
proponent carries the burden of proving "that some harm, legal or at least tangible, would flow
from a denial of reconsideration," and accordingly persuading the Court that in order to vindicate
justice it must reconsider its decision. *Dynamic Visions, Inc.*, 321 F.R.D. at 17 (internal quotation
marks omitted) (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)).

     "In general, a court will grant a motion for reconsideration of an interlocutory order only
when the movant demonstrates: '(1) an intervening change in the law; (2) the discovery of new
evidence not previously available; or (3) a clear error in the first order.'" *Zeigler v. Potter*, 555 F.
Supp. 2d 126, 129 (D.D.C. 2008) (quoting *Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*,
217 F.R.D. 235, 237 (D.D.C. 2003)), *aff'd*, No. 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1,
2010). Justice may also require reconsideration "'where a controlling or significant change in the
law or facts has occurred since the submission of the issue to the court.'" *McLaughlin v. Holder*,
864 F. Supp. 2d 134, 141 (D.D.C. 2012) (quoting *Ficken v. Golden*, 696 F. Supp. 2d 21, 35 (D.D.C.
2010)).

     "[W]hile the law of the case doctrine does not necessarily apply to interlocutory orders,
district courts generally consider the doctrine's underlying rationale when deciding whether to
reconsider an earlier decision." *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 328 (D.D.C.
2007). Moreover, motions for reconsideration "cannot be used as an opportunity to reargue facts
and theories upon which a court has already ruled, nor as a vehicle for presenting theories or

arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (internal quotation marks omitted)  (quoting *SEC v. Bilzerian*, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

B.  Pretrial Detention Order

As the Court addresses the reasoning underlying its original order, the Court includes the relevant standard for the original motion here.  Under the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, if a judicial officer finds after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," that officer "shall order the detention of the person before trial." *Id.* § 3142(e)(1).  Because the magistrate judge and this Court previously determined that Mr. Gamble had rebutted the presumption as to risk of flight, at issue in this case is whether the "safety of any other person and the community" can be assured.  *See id.*  There must be "clear and convincing" evidence of dangerousness to support a finding under this prong.  *Id.* § 3142(f).  "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).

"That default is modified, however, for certain, particularly dangerous defendants."  *Id.* The Act creates a rebuttable presumption of dangerousness if "there is probable cause to believe that the" defendant committed, for instance, "an offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed."  18 U.S.C. § 3142(e)(3)(D). A grand jury indictment alone is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  The Indictment against Mr. Gamble charges him with a violation of 18 U.S.C. § 1591(d), ECF No. 17 at 2, which, as the magistrate judge found, ECF No. 7 at 6, is an offense

under title 77 that carries a maximum term of imprisonment of 25 years, *see* 18 U.S.C. § 1591(d). Mr. Gamble therefore faces a rebuttable presumption of dangerousness.

"[T]he presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). "While the burden of production may not be heavy," the defendant must still introduce some evidence. *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. 2016); *see also United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) ("Although the government retains the burden of persuasion, a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (explaining that presumption is "rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released" (internal quotation marks omitted) (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, the defendant must present "all the special features of his case that take it outside the congressional paradigm[.]" *Stone*, 608 F.3d at 946 (internal quotation marks omitted) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)).

"The defendant's burden, moreover, is only a burden of production; the burden of persuasion remains with the government throughout the proceeding." *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Still, "the presumption is not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Id.* (quoting *Jessup*, 757 F.2d at 382). "The presumption does 'not vanish upon the introduction of contradicting evidence,'" but instead the judicial officer must consider Congress's conclusion that defendants charged with these offenses are "likely to pose a danger to the community." *Id.*

(quoting *Jessup*, 757 F.3d at 383); *see also United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) ("[T]he presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.").

In addition to the presumption, the Court must also examine the available information that touches upon the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community. *See* 18 U.S.C. § 3142(g).

### III. DISCUSSION

Mr. Gamble now asks this Court to reconsider its December 17, 2019 Order. In particular, he challenges certain facts and contends that the Court assumed Mr. Gamble's guilt, improperly relied solely upon the weight of the evidence, and ignored the facts of cases cited in the relevant Memorandum Opinion. Mr. Gamble thus contends mostly that there were clear errors of law in the December 17, 2019 Memorandum Opinion requiring reconsideration; he does not appear to contend that there are previously unknown facts or law that this Court should consider. In addition, Mr. Gamble raises for the first time his argument that his continued pretrial detention constitutes a violation of due process. In addition to addressing these arguments below, the Court reincorporates and makes part of this opinion its December 17, 2019 Order and Memorandum Opinion.

<u>A. Pretrial Detention</u>

Mr. Gamble raises several arguments related to the Court's pretrial detention analysis in the December 17, 2019 Memorandum Opinion. In particular, he suggests that the Court erred in its analysis of the second and fourth factors.

*1. The Second Factor*

Before discussing the legal errors that Mr. Gamble alleges with respect to the Memorandum Opinion, the Court first addresses some of the facts that he includes in the background portion of his briefing. Mr. Gamble appears to frame this as a response to the Court's finding that the second factor relevant for pretrial detention, the weight of the evidence against the defendant, weighed against revoking pretrial detention in this case. *See* Def.'s Mot. at 1 ("In that opinion, the court relies most heavily on the evidence it claims supports the obstruction charges against Mr. Gamble."). It is unclear why Mr. Gamble raises these facts and arguments now, as none of them appear to have to come to light recently and therefore could have been included in his earlier motions. *See Judicial Watch, Inc. v. U.S. Dep't of Energy*, 319 F. Supp. 2d 32, 34 (D.D.C. 2004) ("[A] motion for reconsideration will be granted only if the moving party 'presents new facts or a clear error of law which compel[s] a change in the court's ruling.'" (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995) (three judge panel))). Regardless, the Court will consider his arguments in this vein now.

To support his claim that the weight of the evidence was not against him, Mr. Gamble proposes that he did not speak with Mr. Cole after Mr. Cole was arrested, despite allegations that they were close friends; that Mr. Cole spoke to "several other people, including primarily Witness #1 and his mother, about cleaning out his apartment;" that Mr. Cole wanted Witness 1 "in charge of the entire operation" and that Witness 1 asked for the ultrasound while in the apartment; and

that neither Witness 1 nor "anyone else told Mr. Gamble that there was any improper purpose" in removing any of Mr. Cole's belongings from his apartment. Def.'s Mot. at 1–2. He suggests that Witness 1 "may have intended to obstruct justice," but that "there is no evidence that Mr. Gamble had any such intent." *Id.* at 2. He highlights that, despite this, "somehow Witness #1, who was in charge of emptying Cole's apartment, was granted immunity and Mr. Gamble has been detained."[2] *Id.*

In including these, Mr. Gamble does not seek to contradict many of the facts included by this Court in its December 17, 2019 Memorandum Opinion, or the facts repeated by the magistrate judge in the First Detention Order. For instance, while the magistrate judge's opinion noted that Witness 1 understood Mr. Gamble "to be a close friend of Mr. Cole," First Detention Order at 4, nowhere do the opinions specify that Mr. Gamble spoke with Mr. Cole after Mr. Cole's arrest. And, in any case, it is unclear how Mr. Gamble's contact with Mr. Cole post-arrest would have any bearing on what Witness 1 understood, before their arrests, to be the closeness of their friendship. Nor does Mr. Gamble disagree with the fact of the additional grand jury testimony described by the Government in its opposition. *See* Gov't Opp'n at 2–3.

At bottom, Mr. Gamble here appears to be questioning the credibility of Witness 1 (and possibly other witnesses who have testified in front of the grand jury). *Cf. id.* (agreeing with this characterization in arguing that Mr. Gamble "is not alleging that the indictment should be dismissed, but rather . . . that this Court should not credit the sworn testimony of Witness #1"). But this Court need not judge the credibility of Witness 1, or any grand jury witness, at this point.

---

[2] In his Reply, Mr. Gamble also points out that the Government explained that Mr. Gamble was charged by "Criminal Complaint" in the Government's opposition. Def.'s Reply at 1. While Mr. Gamble rightly notes that he has been charged with an Indictment, the docket also reflects that he was arrested upon Complaint. *See* Compl, ECF No. 1. In any event, in light of the Indictment, this has no bearing on the Court's decision here.

The grand jury considered sworn testimony from Witness 1 and other key witnesses. *See, e.g.*, *id.* at 2. The grand jury found whatever testimony they heard—testimony of which Mr. Gamble is in possession—sufficiently credible to return the Indictment. The Court therefore declines Mr. Gamble's invitation to not credit Witness 1's testimony in relation to this particular issue.

Second, Mr. Gamble contends that even if the weight of the evidence is against him, that factor is the least important in the analysis. In *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985), for instance, the Ninth Circuit explained its position "that the weight of the evidence is the least important of the various factors," *id.* at 1408. *Cf., e.g.*, *Taylor*, 289 F. Supp. 3d at 66 (explaining that "[e]ven overwhelming evidence of guilt would not, alone, meet" clear and convincing test under Bail Reform Act). Despite this fact, Mr. Gamble contends, the Court relied heavily on this factor and presumed Mr. Gamble's guilt. The Court does not necessarily disagree that this factor alone is not definitive. So too does the Court agree that "the statute neither requires nor permits a pretrial determination that the person is guilty." *Motamedi*, 767 F.2d at 1408. However, the Court disagrees with characterizing its prior opinion as most heavily relying upon the weight of the evidence.

To begin with, the Court did not rely solely on the weight of evidence against Mr. Gamble. In its Memorandum Opinion, the Court first found that Mr. Gamble did not rebut the presumption of dangerousness. Dec. 17, 2019 Mem. Op. at 7–8. The Court then examined the four factors relevant under the Bail Reform Act and found that three of them—the nature and circumstances of the offense charged, the weight of evidence against Mr. Gamble, and the nature and seriousness of the danger to any person of the community—weighed against Mr. Gamble. *Id.* at 8–12. At no point does the Court state that it relied most heavily on the weight of the evidence. Indeed, the

Court discussed the other two factors weighing against Mr. Gamble in some depth and relied upon them as well.

Nor did the Court presume Mr. Gamble's guilt. Mr. Gamble points to a specific portion of one sentence to support his assertion. He quotes the following language from page 12 of the Court's Memorandum Opinion: "[Mr. Gamble] recently and in a related proceeding obstructed justice . . . which in turn presents a serious danger that he may do so again in his own case." Def.'s Mot. at 2. He also quotes the Court in stating that "Mr. Gamble does not have an extensive history of obstruction of justice." *Id.* Placing these phrases in context is helpful. The full sentence reads as follows:

> While Mr. Gamble does not have an extensive history of obstruction of justice, the weight of the evidence presented by the Government supports that he has recently and in a related proceeding obstructed justice by attempting to, for instance, hide or conceal relevant evidence, which in turn presents a serious danger that he may do so again in his own case.

Dec. 17, 2019 Mem. Op. at 12.

This sentence was in the portion of the Court's analysis of the fourth factor, "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," after consideration of the second and third factors. *See* 18 U.S.C. § 3142(g). To clarify any lingering confusion about this sentence, the Court's analysis was that the evidence presented by the Government, which weighed against Defendant and was discussed in relation to the second factor, further supported that his release would pose a danger under the fourth factor. When the Court noted that Mr. Gamble did not have "an extensive history of obstruction of justice," moreover, it meant to say just that—that he did not have an extensive history, which might be relevant to the fourth factor as well. The Court did not suggest that he had any history other than the current charges.

At bottom, the Court did not presume Mr. Gamble's guilt, but instead explained that these interrelated factors weighed against revoking pretrial detention in this case. *See Taylor*, 289 F. Supp. 3d at 66 ("The Court must, instead, review the 'weight of the evidence against the' defendant as an indicia of whether any conditions of pretrial release will reasonably assure the safety of the community. If the government possesses overwhelming evidence that the defendant is guilty of the crime charged—and the nature of the charged offense involves a danger to the community— then the second factor will help meet the government's burden of persuasion."). Accordingly, the Court rejects Mr. Gamble's arguments here that the Court committed this claimed legal error in its analysis of the second and fourth factors.

*2. The Fourth Factor*

Mr. Gamble also devotes much of his Motion to discussing cases that the Court cited in its Memorandum Opinion, and to arguing why those cases do not support Mr. Gamble's detention in this case. This appears to be another argument that the Court committed clear legal error in its Order and accompanying Memorandum Opinion. His arguments target in particular the Court's analysis with respect to the fourth factor, which is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *See* 18 U.S.C. § 3142(g)(4).

Aside from discussing particular cases, Mr. Gamble disagrees that a Court may rely upon a case to support a proposition or a finding without the factual situation of that case being perfectly analogous. *See* Def.'s Mot. at 6. While this Court agrees, in broad terms, that the specific holding of a court "cannot be divorced from the facts of that case," *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 123 (3d Cir. 2004), the Court does not agree that the reasoning or findings in a case cannot support statements or conclusions in a case that is not perfectly analogous. Legal reasoning

and principles may be derived from cases that are relevant, but not perfectly analogous, and applied in similar cases as appropriate. This can be viewed as a form of stare decisis, which "is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Such principles are, in fact, part and parcel of our legal system. With that in mind, the Court turns to Mr. Gamble's arguments with respect to specific cases.

Mr. Gamble first discusses *United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986), which this Court cited for the specific proposition that witness tampering was "sufficient to justify pretrial detention," Dec. 17, 2019 Mem. Op. at 11, in support of the finding that the fourth factor weighed in favor of pretrial detention here. Mr. Gamble argues that this case is inapposite because the facts are distinguishable. Gotti was charged under the Racketeer Influenced and Corrupt Organizations Act with "participating in various criminal activities of the Gambino organized crime family." 794 F.2d at 775. He was released on a million-dollar personal recognizance bond but was later arrested again for allegedly continuing to participate in criminal activities. *Id.* The government therefore moved to revoke his bail. *Id.* In support of their motion, the government called witnesses who testified that Gotti had tried to intimidate one of the witnesses related to the original charges against Gotti in an attempt to keep him from testifying. *Id.* The district court ordered Gotti's bail revoked on the basis that "nothing short of detention" would keep Gotti from interfering with witnesses in the pending trial. *Id.* at 775–76.

On appeal, the Second Circuit construed (for the first time in that circuit) certain provisions in the Bail Reform Act relating to bail revocation proceedings. *See id.* at 776. In that context, the court considered the standard guiding a finding, "by only a preponderance of the evidence, that no

conditions of release will guard against flight or dangerousness or that the person is unlikely to abide by any release condition." *Id.* at 777. The court noted that this is different from the burden of proof relevant in the instant case. *Id.* ("It is true that in the context of an initial detention hearing held at a defendant's first appearance before a judicial officer, the government must prove the facts underlying danger to the community or to any other person by clear and convincing evidence."). However, in reviewing the district court's actions, the Second Circuit agreed that the district court had not been unreasonable in concluding that detention was justified considering Gotti's actions. *See id.* at 779.

Mr. Gamble argues that because the standard of review and facts differed, any reliance upon the principles in *Gotti* is unwarranted. Not so. The Court relied specifically on the Second Circuit's reasoning that witness tampering, or essentially obstruction of justice, can weigh in favor of detention in certain cases. While the standard of proof in *Gotti* admittedly differs from the standard at issue here, the court's finding that the alleged obstruction of justice posed a danger to the community is still relevant. To put it briefly, although the obstruction occurred later in the proceedings than it did in this case, that does not lessen the persuasiveness of this broader finding.

Mr. Gamble makes a similar argument about *United States v. LaFontaine*, 210 F.3d 125 (2d Cir. 2000), which he also suggests is inapposite. This Court quoted *LaFontaine* specifically for the proposition that "obstruction of justice has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984." *Id.* at 134; *see* Dec. 17, 2019 Mem. Op. at 11 (quoting this language). The Second Circuit in *LaFontaine* cited to several cases supporting the assertion that obstruction of justice had previously been sufficient to support a finding of dangerousness. *See LaFontaine*, 210 F.3d at 134 ("See, e.g., *United States v. Melendez–Carrion*, 790 F.2d 984, 1002 (2d Cir. 1986) (although the

court was skeptical of the constitutionality of pretrial confinement for general dangerousness, it noted that detention may be validly imposed where there is evidence of witness tampering); *[United States v.] Payden*, 768 F.2d [487,] 490 [(2d. Cir. 1985)] (applying the Bail Reform Act of 1966 and noting that the court had the power to detain defendant 'if it found that his release posed a serious threat to the court's processes'); *[United States v.] Acevedo–Ramos*, 755 F.2d [203,] 207 [(1st Cir. 1985)] (noting that the 1984 Act extends the scope of pretrial detention beyond risk of flight and obstruction of justice).").  The court also singled out *Gotti* as relevant precedent, explaining that:  "In *Gotti*, we held that a single incident of witness tampering constituted a 'threat to the integrity of the trial process, rather than more generally a danger to the community,' and was sufficient to revoke bail."  *Id.*; *see also United States v. Millan*, 4 F.3d 1038, 1048 (2d Cir. 1993) (explaining that, in *Gotti*, "a specific past instance of witness tampering was deemed to provide an adequate basis for confinement in the face of Gotti's claim that the due process clause prohibits pretrial detention based on a prediction that a defendant will intimidate witnesses because he has done so in a prior case" (internal quotation marks omitted)).  Moreover, the Second Circuit noted in *LaFontaine* that "a record of violence or dangerousness . . . is not necessary to support pretrial detention," specifically in relation to the fourth factor.  *Id.*

Mr. Gamble again argues that the facts of *LaFontaine* make it irrelevant here.  But Mr. Gamble overlooks that it is the above discussion and principles to which the Court referred in its December 17, 2019 Memorandum Opinion.  While *LaFontaine* itself had a procedural posture and facts that are not an exact match for Mr. Gamble's case, the Court found persuasive this discussion regarding how the potential for obstruction of justice may present a significant danger to the community and court's processes.  The same is true of *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300 (D. Utah Aug. 27, 2013), in which the district court found, while

analyzing the factors relevant to whether the length of defendant's pretrial detention violated due process, that evidence of obstruction of justice efforts may "present[] clear and convincing evidence that [the defendant] pose[d] a danger to the community," *id.* at *8. The facts in these cases do not map perfectly onto Mr. Gamble's case, but this Court found—and still finds—persuasive the underlying reasoning and findings in those cases with respect to the danger to the community that potential obstruction of justice may present.

Nor does Mr. Gamble direct the Court to other cases that he finds more applicable. He cites to language in *United States v. Khashoggi*, 717 F. Supp. 1048 (S.D.N.Y. 1989), in which the district court found that there was "no justification for pretrial detention on obstruction grounds," *id.* at 1051. In that case, the government based its application in part on 18 U.S.C. § 3142(f)(2)(B), which provides for a pretrial detention hearing where there is a serious risk that the defendant will obstruct, or attempt to obstruct, justice. *See Khashoggi*, 717 F. Supp. at 1051. However, because the government had "made no proffer in support of this ground for detention" and because the Court was "unable to glean any such support from the Government's submissions," it found there was insufficient evidence to justify pretrial detention on obstruction grounds. *Id.* That is distinguishable from the case here, as outlined above and in the Court's December 17, 2019 Order and accompanying Memorandum Opinion. Moreover, at no point did the district court in *Khashoggi* disagree with the underlying principles from *Gotti* and other cases.

In short, nothing Mr. Gamble has pointed out amounts to any legal error that would require this Court to reconsider its prior decision that the fourth factor weighs in favor of pretrial detention. The Court therefore denies his Motion on this basis.

Mr. Gamble also suggests that Mr. Gamble's race was "a factor in the detention of Mr. Gamble." Def.'s Mot. at 6–7. This portion of his brief reads:

> There is another fact that differentiates Mr. Gamble from the cases cited by the court—Mr. Gamble is black. There are "widespread and well-documented racial disparities in the bail determination process." Cynthia E. Jones, "Give Us Free: Addressing Racial Disparities in Bail Determinations," 16 N.Y.U. Journal of Legislation and Public Policy 919, 921 (2013). Given the lengths to which the court goes to stretch the law and the facts, it is difficult to believe that this is not a factor in the detention of Mr. Gamble.

*Id.* Regardless of whether "racial disparities" play a role in the "bail determination process" more broadly, Mr. Gamble has not pointed to anything in the record to indicate that race has played a role in this case. That the judicial officers in this case have come to different legal conclusions than those advocated for by Mr. Gamble with respect to his pretrial detention do not signify that the officers' decisions are based on his race.

At bottom, Mr. Gamble argues that this Court erred in its original ruling on his Motion to Revoke Detention Order, ECF No. 21. He does not suggest that there is new evidence or new law that requires reconsideration of the Court's denial of his Motion. But, as outlined above, Mr. Gamble has failed to carry his burden of showing that the prior ruling contained a legal error that requires reconsideration. The Court reaffirms its prior ruling that Mr. Gamble has not rebutted the presumption in this case and that, on balance, the four factors outlined in 18 U.S.C. § 3142 weigh in favor of pretrial detention.

## B. Due Process

Mr. Gamble further argues that his pretrial detention violates his due process rights under the Fifth Amendment. *See* Def.'s Mot. at 7; Def.'s Suppl. Br. The Government argues that his detention does not violate due process and that Mr. Gamble has been partly responsible for any delays in this matter. *See* Gov't Suppl. Br. at 2–4. The Court agrees that, at present, Mr. Gamble's detention does not violate the Due Process Clause.

"The government may detain a defendant prior to trial consistent with the Due Process Clause of the Fifth Amendment so long as confinement does not amount to 'punishment of the

detainee.'" *Millan*, 4 F.3d at 1043 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). If there is no intent to punish, "whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention 'appears excessive in relation to' the nonpunitive purpose." *Id.* (quoting *Wolfish*, 441 U.S. at 538). But when detention becomes "excessively prolonged, it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs." *Id.* (internal quotation marks omitted). In particular, an extended pretrial detention may infringe upon a defendant's rights under the Due Process Clause "by infringing upon an individual's basic liberty interest in being free from incarceration absent a criminal conviction." *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 275 (D.D.C. 2011). "This liberty interest is deeply rooted: '[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" *Id.* (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

Although courts generally agree that prolonged detention may, in some cases, violate due process, they have also refrained from prescribing any specific timeframe to guide that determination. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 & n.4 (1987) ("We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."); *United States v. Orena*, 986 F.2d 628, 630 (2d Cir. 1993) ("[T]he due process limit on the duration of preventive detention requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement." (internal quotation marks omitted)); *United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir. 1986) ("Because due process is a flexible concept, arbitrary lines should

not be drawn regarding precisely when defendants adjudged to be flight risks or dangers to the community should be released pending trial.").

Courts have therefore made the determination of whether "the detention serves a permissible regulatory purpose or an impermissible punitive purpose," *Young*, 2013 WL 12131300, at *2, on "a case-by-case basis," *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012) (internal quotation marks omitted) (quoting *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir. 1986)), as amended (Oct. 9, 2012). Courts have considered several factors in making that determination, including (1) the length of the detention, (2) the extent of the prosecution's responsibility for the delay, and (3) the strength of the evidence on which the detention was originally based. *See, e.g.*, *Briggs*, 697 F.3d at 101 (applying these factors); *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (same); *see also United States v. Gelfuso*, 838 F.2d 358, 359 (9th Cir. 1988) ("We consider the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued."); *United States v. Elmore*, No. 13-CR-00764-WHO-1, 2016 WL 6427911, at *1 (N.D. Cal. Oct. 31, 2016) (outlining similar process in stating that "[i]n making that determination, courts should (i) identify the regulatory goal or goals that the detention may serve and assess the extent to which detention serves that goal or goals, (ii) consider how long the pretrial detention may last, and (iii) decide whether the length of detention outweighs the interests identified in support of detention"), *aff'd*, No. 16-10469, 2016 WL 10520758 (9th Cir. Dec. 12, 2016); *United States v. Ali*, 965 F. Supp. 2d 139, 149–58 (D.D.C.) (applying same factors as used in *Briggs*), *rev'd*, 534 F. App'x 1 (D.C. Cir. 2013) (reversing district court's finding that pretrial detention violated due process without commenting on test used by district court); *cf. United States v. Zannino*, 798 F.2d 544, 547 (1st Cir. 1986) (outlining similar and overlapping factors as in *Briggs*); *Accetturo*, 783 F.2d at 388

(same).  "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." *Briggs*, 697 F.3d at 101.  The Court finds the three-factor test persuasive and thus examines each of those factors below.

   *1. Length of Detention*

   The first factor is the length of detention.  As mentioned above, courts have refrained from finding that any certain period of detention signals a violation of due process.  Indeed, they have noted that "the length of a detention period will rarely by itself offend due process."  *Orena*, 986 F.2d at 631.  Still, they have provided guidance on when the length of detention weighs in favor of a violation.  For example, courts have found that periods ranging from four months to thirty months do not violate due process in light of the circumstances of individual cases.  *See, e.g.*, *Briggs*, 697 F.3d at 103 (finding that twenty-six-month detention did not violate due process, although court was "troubled" by defendant's long detention and thought it a "close call"); *Millan*, 4 F.3d at 1044, 1049 (finding that pretrial detention period "between thirty and thirty-one months without a formal finding of guilt" generally pointed in favor of finding a due process violation, but ultimately reversing district court's decision to release defendants on due process grounds); *Orena*, 986 F.2d at 630 (finding that period of "approximately nine months" did not violate due process); *Young*, 2013 WL 12131300, at *3, *8 (finding that anticipated sixteen-month detention weighed in favor of finding violation, but ultimately finding that in light of overall circumstances, there was no violation of due process); *see also United States v. Bikundi*, 599 F. App'x 4 (D.C. Cir. 2015) (summarily affirming district court's finding that detention period of around eleven months did not violate due process; *see United States v. Bikundi*, No. 14-cr-30, Mem. Op. and Order, ECF No. 91 (D.D.C. Jan. 21, 2015) (original order denying defendant's motion and explaining timeline of

events)); *United States v. Williamson*, 584 F. App'x 2 (D.C. Cir. 2014) (summarily affirming district court's finding that detention period of approximately four months did not violate due process; *see United States v. Williamson*, No. 14-cr-151, Order, ECF No. 52 (D.D.C. Sept. 11, 2014) (original order denying defendant's motion); *see id.*, Order, ECF No. 5 (D.D.C. July 7, 2014) (original pretrial detention order explaining original detention timeline)); *United States v. Ali*, 459 F. App'x 2, 3 (D.C. Cir. 2012) (summarily affirming district court's finding that period of seven months, and ultimate pretrial detention of twelve months considering trial date, did not violate due process; *see United States v. Ali*, No. 11-cr-0106, 2011 WL 6748503, at *1 (D.D.C. Dec. 21, 2011) (explaining timeline)).

Here, Mr. Gamble contends that the length of his pretrial detention weighs in favor of finding that his detention violates due process. He was arrested on May 17, 2019 and temporarily detained until the magistrate judge granted the Government's motion seeking his detainment pending trial on May 22, 2019. *See* May 22, 2019 Min. Order; May 21, 2019 Min. Order. His trial is currently scheduled to begin on May 18, 2020. *See* Jan. 14, 2020 Min. Order. As of the date of this Opinion, he has therefore been detained for approximately nine months. By the time his trial begins, he will have been detained for around one year, or twelve months. While a twelve-month period of delay presents concerns, and weights slightly in favor of Mr. Gamble's argument here, it does not on its own necessitate finding that due process has been violated. As noted above, similar or even longer periods of detention have been found not to violate due process considering the circumstances of individual cases. This detention period is less concerning here, where a trial date has been set and trial is expected to last approximately two weeks. Moreover, as the Court explains below in considering the other two factors, the circumstances of this case suggest that this detention period has not violated due process.

The cases that Mr. Gamble relies upon do not suggest that a different conclusion is appropriate. The Second Circuit in *United States v. Ojeda Rios*, 846 F.2d 167 (2d Cir. 1988) (per curiam), found that due process could not "tolerate any further pretrial detention" when defendant Ojeda Rios had been detained for thirty-two months and when trial would not occur for several months yet, *id.* at 169. Mr. Gamble admits that the period in *Ojeda Rios* was "much longer than in" his case, Def.'s Suppl. Br. at 2–3, but there is little comparison between an almost three-year detention with no certain trial date and a nine-month detention with a set trial date. *Ojeda Rios* is therefore unpersuasive here.

The same is true of *United States v. Colombo*, 777 F.2d 96 (2d Cir. 1985), the other case on which he relies.[3] The Second Circuit in *Colombo* actually reversed the district court's decision to release defendant Colombo, and in the process addressed the lower court's alternate holding that release was warranted under the due process clause. *See id.* at 100–01. The court noted that, in passing the Bail Reform Act, Congress relied upon the Speedy Trial Act's timeline to "ensur[e] that cases in which a defendant is detained will be tried expeditiously." *Id.* at 100. It further explained that in complicated cases, significant time periods are likely to be excluded under the Speedy Trial Act, delaying trial beyond time periods set forth in that Act. *See id.* at 100–01. But the court refrained from determining whether "substantial length of delay of the trial counsel[ed] for Colombo's release as a statutory or constitutional issue since it remain[ed] a speculative matter." *Id.* at 101. The case therefore has little application here. And while the facts in *Colombo* were more potentially complicated than those in this case, that discounts the fact that there is some digital discovery in this case as well as the fact that several motions have been made that have

---

[3] Mr. Gamble in fact refers to this case as *United States v. Wardy* in his supplemental briefing. *See* Def.'s Suppl. Br. at 3. However, the citation and facts provided by Mr. Gamble align with *United States v. Colombo*. The Court therefore assumes that Mr. Gamble intended to cite to *Colombo*.

delayed the trial schedule. The Court explores this in more depth below in considering the second factor. In short, while Mr. Gamble's current nine-month period of detention—and anticipated twelve-month detention—is concerning, it does not strongly suggest that due process has been violated at this point.

## 2. Responsibility for the Delay

The Court next considers responsibility for the delay in this case. Mr. Gamble has not presented significant arguments as to this factor. The Government contends that Mr. Gamble has contributed to delays in this case through his change of counsel and motions. *See* Gov't Suppl. Br. at 3–4.[4] The Court has also reviewed the record in this case to consider the cause of any delays. There are several relevant sets of potential causes.

Two things suggest that the Government may be partly responsible for any delays. First is the discovery in this case. The parties have agreed at recent Status Hearings that although discovery is mostly complete, there is still at least one outstanding discovery issue, which appears to be related to a cellular phone that is still in processing. The Government most recently represented that the phone is still in processing in a Status Hearing in Mr. Cole's case on January 30, 2020. Considering that the trials of Mr. Cole and Mr. Gamble are both scheduled in May of this year, the Court urged the Government to finish processing the phone and turn over any remaining discovery promptly. However, although this is an outstanding issue, Mr. Gamble and his counsel have not argued either in their briefing or at any recent Status Hearing that this is a cause of delay in this case. So even though the phone still being in processing suggests that the

---

[4] The Government submitted its Response the day after the deadline. However, considering the tight turnaround—the Court requested that the response be filed by Tuesday morning on the prior Friday's afternoon—the Court shall, in its discretion, allow the late filing and consider the Government's arguments.

Government may be partly responsible for the delay, it does not appear that the parties have been waiting solely on this discovery. The second factor suggesting that the Government *may* be partly responsible is that the Indictment was not returned until October 11, 2019, although it is unclear to this Court why that is the case and whether that delay is attributable to the Government.

Another potential cause of delays in this case is the matter of Mr. Gamble's representation. Mr. Gamble was originally represented by counsel who was representing Mr. Gamble at the initial hearing on May 17, 2019. *See* May 17, 2019 Min. Order. However, at the October 18, 2019 Status Hearing in front of Magistrate Judge Robin M. Meriweather, that counsel moved to withdraw. *See* Oct. 18, 2019 Min. Order. Magistrate Judge Meriweather further granted Mr. Gamble's motion for new counsel. *See* Oct. 18, 2019 Min. Order. This Court subsequently granted his original counsel's motion to withdraw, *see* Oct. 25, 2019 Min. Order, and endeavored to find Mr. Gamble new counsel. His new counsel made an appearance on October 23, 2019. *See* Notice of Attorney Appearance, ECF No. 18. As represented to the Court at Status Hearings, new counsel for Mr. Gamble thereafter had to review the discovery produced in the case and discuss the discovery and other decisions with his client. *See, e.g.*, Oct. 29, 2019 Min. Order ("Counsel for Defendant indicated that in light of the change of counsel, more time was needed for them to review the discovery produced by the Government."); Nov. 15, 2019 Min. Order ("Counsel for Mr. Gamble indicated that the Government has provided most of the anticipated discovery and explained that additional time was necessary to review the discovery and to file a renewed motion regarding Mr. Gamble's detention."). While the Court recognizes Mr. Gamble's rights with respect to his representation, this change of counsel several months into the case undoubtedly delayed matters.

Moreover, Mr. Gamble has made several motions related to his pretrial detention that have also attributed to delays in the case. He first moved on September 6, 2019 for the magistrate judge

to reconsider the pretrial detention order.  *See* Mot. to Reconsider Pretrial Detention Order, ECF No. 13.  The Government filed its response on September 13, 2019.  *See* Gov't's Resp. to Def. Lawrence Gamble's Mot. to Reconsider Pretrial Detention, ECF No. 15.  Magistrate Judge Harvey heard oral arguments on the Motion on September 27, 2019.  *See* Sept. 27, 2019 Min. Order.  The magistrate judge denied Mr. Gamble's Motion and explained his reasoning on September 30, 2019.  *See* Sept. 30, 2019 Min. Order; Sept. 27, 2019 Min. Order.  Counsel for Mr. Gamble then represented to this Court on November 14, 2019 that Mr. Gamble intended to file another motion regarding Mr. Gamble's detention.  *See* Nov. 15, 2019 Min. Order.  That Motion was filed on December 6, 2019.  *See* Mot. to Revoke Detention Order, ECF No. 21.  The Government responded on December 16, 2019.  *See* Gov't's Opp'n to Def.'s Mot. to Revoke the Detention Order, ECF No. 23.  The Court denied Mr. Gamble's Motion on December 17, 2019.  *See* Dec. 17, 2019 Order, ECF No. 24; Dec. 17, 2019 Mem. Op., ECF No. 25.  Counsel for Mr. Gamble then indicated in a December 18, 2019 Status Hearing that Mr. Gamble intended to file his current motion for reconsideration.  *See* Dec. 19, 2019 Min. Order.  That Motion was ultimately filed around one month later on January 17, 2020.  *See* Def.'s Mot., ECF No. 28.  As Mr. Gamble's original due process argument was only a few sentences long, the Court requested supplemental briefing from Mr. Gamble on January 30, 2020, *see* Jan. 30, 2020 Order, ECF No. 31, which Mr. Gamble then provided on January 31, 2020, *see* Def.'s Suppl. Br., ECF No. 32.  Altogether, significant time has been dedicated in this case to Mr. Gamble's motions regarding his pretrial detention.

Certainly, Defendants in criminal cases may make motions to protect their rights, including those found under the Fifth and Six Amendments to the U.S. Constitution.  It must be recognized, however, that those efforts may at times delay trials in criminal cases.  The Speedy Trial Act recognizes that this is true when it allows time to be excluded from calculations under the Act for

"[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161. Mr. Gamble's motions related to his pretrial detention, which span from September 2019 to February 2020, have also potentially delayed matters in this case as well.

Lastly, it is worth noting that Mr. Gamble has not recently expressed concerns about the Speedy Trial clock. In fact, he has nearly always consented to the exclusion of certain periods of time. *See, e.g.*, June 5, 2019 Min. Order (finding that time from June 5 through June 21, 2019 was excluded upon joint motion); June 21, 2019 Min. Order (finding that time from June 21 through August 20, 2019 was excluded upon joint motion); Aug. 20, 2019 Min. Order (finding that time from August 20 through September 6, 2019 was excluded upon joint motion); Sept. 19, 2019 Min. Order (noting that parties "agree that the time under the Speedy Trial Act continues to be tolled as a result of the pending motion"). Mr. Gamble did object to excluding the time between September 6, 2019 and September 19, 2019. *See* Sept. 6, 2019 Min. Order. He also raised concerns about the Speedy Trial clock at a Status Hearing in front of Magistrate Judge Meriweather on October 18, 2019. *See* Oct. 18, 2019 Min. Order. However, since the October 28, 2019 Status Hearing, he has consistently consented to the exclusion of time periods between Status Hearings, which this Court has found are excludable because they serve the ends of justice. *See, e.g.*, Oct. 29, 2019 Min Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between the date of the Status Hearing on October 28, 2019 and the next Status Hearing on November 14, 2019."); Nov. 15, 2019 Min. Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between the date of the Status Hearing on November 14, 2019 and the next Status Hearing on December 4, 2019."); Dec. 6, 2019 Min. Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between

the date of the originally scheduled Status Hearing on December 4, 2019 and the next Status Hearing on December 18, 2019."); Dec. 19, 2019 Min. Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between the date of the Status Hearing on December 18, 2019 and the next Status Hearing on January 13, 2020."); Jan. 14, 2020 Min. Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between the date of the Status Hearing on January 10, 2020 and the next Status Hearing on January 28, 2020."); Jan. 28, 2020 Min. Order ("Mr. Gamble consented to the tolling of his Speedy Trial rights between the date of the Status Hearing on January 28, 2020 and the next Status Hearing on February 18, 2020."). This further suggests that the Government is not solely, or even mostly, responsible for delays in this matter.

To put it briefly, actions by both Mr. Gamble and the Government are responsible for any delays in this case. There is no indication, nor has Mr. Gamble explicitly argued, that the Government is responsible for any lengthy delays here. Accordingly, this consideration does not suggest that here there is a due process violation.

### 3. Strength of Evidence

The last factor is the strength of the evidence on which the detention was originally based. The Court has already considered the weight of the evidence in the discussion above and in its December 17, 2019 Memorandum Opinion, which the Court has incorporated and made a part of this Memorandum Opinion. To begin with, the Court notes that there is a rebuttable presumption of dangerousness because Mr. Gamble has been charged with a violation of 18 U.S.C. § 1591(d), *see supra*, which Mr. Gamble has not rebutted. In its earlier Memorandum Opinion, this Court found that Mr. Gamble failed to rebut the presumption of dangerousness and discussed the evidence at length. *See* Dec. 17, 2019 Mem. Op. at 7–8. Aside from that, however, the Government has presented compelling evidence, especially from Witness 1 and Witness 2, as

explained above and in the December 17, 2019 Memorandum Opinion. Mr. Gamble has not presented any new evidence that would alter the Court's analysis regarding the strength of the evidence. This consideration therefore also does not suggest that Mr. Gamble's pretrial detention violates due process, especially in light of the fact that he has been detained on dangerousness grounds. *See Orena*, 986 F.2d at 631 ("[T]he constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight.").

At bottom, the Court agrees that, at this point, Mr. Gamble's detention does not violate due process. But because this determination must be made on a case-by-case basis and depends upon current circumstances, the Court denies his Motion seeking release on this ground without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Gamble's Motion. To the extent that Mr. Gamble argues that his pretrial detention violates due process, his Motion is **DENIED WITHOUT PREJUDICE**. An appropriate Order accompanies this Memorandum Opinion.

Date: February 6, 2020

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
