UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LAWRENCE GAMBLE,<br>　　　　Defendant. | Criminal No. 19-348 (CKK) |

**MEMORANDUM OPINION**
(July 2, 2020)

Pending before the Court is Defendant Lawrence Gamble's Motion to Dismiss for Improper Venue and to Transfer Venue, ECF No. 61. Mr. Gamble seeks dismissal of Count III for improper venue and seeks transfer of Counts I and II to the District of Maryland. Upon consideration of the briefing,[1] the relevant authorities, and the record, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** Mr. Gamble's Motion to Dismiss for Improper Venue and to Transfer Venue. In particular, the Court dismisses without prejudice Count III due to improper venue and holds in abeyance the portion of his Motion in which he seeks transfer of Counts I and II.

---

[1] The Court's consideration has focused on the following:
- Def.'s Mot. to Dismiss for Improper Venue and to Transfer Venue ("Def.'s Mot."), ECF No. 61;
- Gov't's Opp'n to Def.'s Mot. to Dismiss Count Three of the Indictment and Transfer Venue of Counts One and Two ("Gov't Opp'n"), ECF No. 67; and
- Def.'s Reply to Gov't's Opp'n to Dismiss Count Three of the Indictment and to Change Venue on Counts One and Two ("Def.'s Reply"), ECF No. 72.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCrR 47(f).

1

## I. BACKGROUND

The Indictment charges Mr. Gamble with three counts: conspiracy to obstruct justice in violation of 18 U.S.C. 1512(c)(1), (c)(2), (k); obstruction of justice in violation of 18 U.S.C. § 1512(c)(1), (c)(2); and obstruction of enforcement of 18 U.S.C. § 1591 (which prohibits sex trafficking of children by force, fraud, or coercion) in violation of 18 U.S.C. § 1591(d). Indictment, ECF No. 17.[2]

Mr. Gamble's case is connected to the prosecution of Rodregiz Cole, who has been charged with Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a). The Government alleges that Mr. Cole was arrested on April 5, 2019. Compl. ¶¶ 4–5. Subsequently, a search warrant was obtained for an address in Baltimore, Maryland that was associated with Mr. Cole. *Id.* ¶¶ 11–12. The search warrant was executed on April 11, 2019. *Id.* ¶ 14. Upon arrival at the Baltimore address, law enforcement found a Witness who had been involved in the investigation of Mr. Cole ("Witness 1") standing next to a parked Toyota Avalon. *Id.* Witness 1, who had come up from South Carolina to Washington, D.C., stated that she had just arrived that morning and that Mr. Gamble had driven her to the Baltimore address. *Id.* She further stated that she, along with Mr. Gamble, had removed certain documents and materials from Mr. Cole's residence and that those materials were packed in bags inside the Toyota Avalon. *Id.* She explained that Mr. Gamble was assisting in removing items from Mr. Cole's house. *Id.*

According to the Government, Mr. Gamble, who was driving the car and whose child was in the back seat, consented to a search of the Toyota Avalon. *Id.* ¶ 15. Law enforcement found critical evidence related to Mr. Cole's case in the bags inside the Toyota Avalon. *Id.* This included

---

[2] The Court draws the following allegations from the Complaint, ECF No. 1, as the Indictment does not contain separate factual allegations, *see* ECF No. 17. This Section focuses on allegations that are directly relevant to Count III of the Indictment and raised by the parties in their briefing.

"pimp-related clothing (including a jacket depicted in a pimp recruitment video posted on Instagram by [Mr. Cole]); a 'pimp cup;' a 'Pimp of the Year' trophy for the year 2018 awarded to 'Don Byti Balla,' [Mr. Cole's] pimp name; multiple credit cards; and various documents associated with [Mr. Cole]." *Id.* Moreover, the Government alleges that a sonogram picture was found in the center console of the Toyota Avalon. *Id.* The significance of the sonogram was that it contained the name and birth date of the seventeen-year-old female complainant who had told law enforcement that she worked for a pimp, who she claimed to be Mr. Cole. *Id.* ¶¶ 1–3, 9, 15.

When interviewed on scene at the Baltimore residence, Mr. Gamble allegedly stated that Witness 1 had called him that morning to get a ride to the train station. *Id.* ¶ 17. He denied that he played any part in putting Mr. Cole's items in his car, the Toyota Avalon. *Id.* He also said that he had no knowledge of the sonogram found in the center console. *Id.* Mr. Gamble stated that he thought Witness 1 was jealous because it appeared that Mr. Cole had gotten one of his other girls pregnant. *Id.* He denied any knowledge of Mr. Cole being a pimp. *Id.*

According to the Government, the following day, April 11, 2019, law enforcement interviewed Witness 1. *Id.* ¶ 18. She allegedly admitted that she had come to the Washington, D.C./Baltimore area on April 9, 2019, before the search warrant was executed and before she previously had said she arrived. *Id.* She further stated that Mr. Cole had called her from the jail and instructed her to remove his firearms and other important items from his residence, and that Mr. Cole told her to have Mr. Gamble help with removing those items from the Baltimore house. *Id.* Witness 1 allegedly provided Facebook messages between her and Mr. Gamble. *Id.* She and Mr. Gamble also allegedly had several phone conversations from April 7, 2019 to April 11, 2019. *Id.* She stated that Mr. Gamble had already gone to Mr. Cole's house, which she said was actually

leased to Mr. Gamble, and had started packing up Mr. Cole's items before she arrived at the Baltimore address. *Id.*

Furthermore, Witness 1 allegedly stated that Mr. Gamble mentioned the sonogram to her first. *Id.* ¶ 19. According to Witness 1, he had gone to the house and found that some jewelry was gone, but he was looking for the sonogram. *Id.* Witness 1 thought he was looking for it because it had "the girl's" name on it and he wanted to see if she had taken Mr. Cole's jewelry. *Id.* Witness 1 stated that Mr. Cole later denied having any knowledge of the sonogram when she asked him about it. *Id.* She stated that she had never seen the sonogram and had no knowledge about it being in the center console of the Toyota Avalon. *Id.*

According to the Government, a review of Mr. Cole's calls from jail in Washington, D.C. revealed several calls with Witness 1 in which he asked her to remove items from his home. *Id.* ¶¶ 20–23. That review further revealed that on April 8, 2019, Witness 1 told Mr. Cole that the door to his house was kicked in, that his money was gone, that his "toys" were not in the house anymore, that Mr. Gamble and Mr. Cole's mother were already at the house packing up his materials, and that Mr. Gamble would not let in "the girl [Mr. Cole] ha[d] been looking for" when she came to get her things. *Id.* ¶ 21. Mr. Cole allegedly asked Witness 1 to call Mr. Gamble on a three-way phone call, but she was unable to do so. *Id.* Mr. Cole also made a call on April 9, 2019 to Witness 1, in which he ultimately admitted that one of the girls was pregnant when questioned about the sonogram. *Id.* ¶ 23. On that call, Witness 1 stated that Mr. Gamble had told her about the sonogram. *Id.* The call logs allegedly revealed at least ten phone calls between Witness 1 and Mr. Gamble. *Id.* ¶ 24.

## II. DISCUSSION

The Court first addresses Mr. Gamble's arguments with respect to dismissing Count III for improper venue before turning to his arguments relating to transferring Counts I and II to the District of Maryland.

A. Motion to Dismiss Count III for Improper Venue

Mr. Gamble contends that Count III should be dismissed because this district is an improper venue. Federal Rule of Criminal Procedure 12 provides that a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When considering a motion to dismiss an indictment, a court must assume the truth of the factual allegations in the indictment. *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

As "[p]roper venue in criminal proceedings was a matter of concern to the Nation's founders," the "Constitution twice safeguards the defendant's venue right." *United States v. Cabrales,* 524 U.S. 1, 6 (1998). Article III provides that "the Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Federal Rule of Criminal Procedure 18 therefore provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

"When the statute proscribing the offense does not contain an express venue provision, '[t]he *locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States v. Morgan*, 393 F.3d 192, 196 (D.C. Cir. 2004) (quoting

5

*Cabrales*, 524 U.S. at 6–7). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999). "When a defendant is charged with multiple counts, venue must be proper on each count." *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000).

The relevant statute here, 18 U.S.C. § 1591(d), contains no venue provision.[3] It provides that "[w]hoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both." 18 U.S.C. § 1591(d). To obtain a conviction, the Government must therefore prove, beyond a reasonable doubt, that Mr. Gamble knowingly obstructed or attempted to obstruct the enforcement of section 1591. *See United States v. McCray*, No. 1:15-CR-212-WSD, 2017 WL 3141172, at *14 (N.D. Ga. July 25, 2017) ("To convict a defendant of that charge, the Government must prove beyond a reasonable doubt that the defendant knowingly obstructed or attempted to obstruct the enforcement of Section 1591."); *see also United States v. Farah*, 766 F.3d 599, 613 (6th Cir. 2014) ("Here, the statute is silent, thus knowingly is the appropriate *mens rea*.").

Mr. Gamble argues that the proper venue for Count III is the District of Maryland because the Government has alleged that all of Mr. Gamble's alleged acts underlying Count III occurred in Maryland. Def.'s Mot. at 4–5. In response, the Government primarily argues that a violation of section 1591, including subsection 1591(d), is a continuing offense and venue is appropriate

---

[3] This is in contrast to Counts I and II, as 18 U.S.C. § 1512 does contain an express venue provision in section 1512(i): "A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred."

under 18 U.S.C. § 3237(a) because this district was impacted by the alleged crime. Gov't Opp'n at 6–7.

First, the Court disagrees that a violation of section 1591(d) is a continuing offense under section 3237(a). Section 3237(a) provides that "[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

The Government fails to distinguish between the other provisions of section 1591, including 1591(a), which in general terms prohibits sex trafficking of a minor, and section 1591(d), which only prohibits obstruction of justice in relation to enforcement of section 1591 generally. Whether a violation of section 1591(a) is a continuing offense is not at issue here, although the cases cited by the Government may support that proposition. *See, e.g.*, *United States v. Cole*, 262 F.3d 704, 710 (8th Cir. 2001) ("Because [the defendant] transported [a minor] from Arkansas with the intent to engage her in illegal sexual activity . . . the Western District of Arkansas was a proper venue for his prosecution."); *Jackson v. United States*, No. 3:15-CR-6 RLM, 2019 WL 3457620, at *3 (N.D. Ind. July 29, 2019) ("18 U.S.C. §§ 1591(a) and 2423(a) are continuing offenses as defined in Section 3237(a), as they each implicate the transportation of a person in interstate commerce."). But nothing indicates that a violation of section 1591(d) is, by default, "begun in one district or completed in another" or "committed in more than one district" under section 3237(a). Unlike continuing offenses that may involve multiple districts, such as conspiracy, *see United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014), a person may obstruct or attempt to obstruct the enforcement of section 1591 all within one district.

But the Government proposes that venue is appropriate because the District of Columbia is a "district impacted by the crime." Gov't Opp'n at 7. In particular, the Government appears to suggest that the alleged victim was trafficked on the streets of the District of Columbia, that the case impacted was based in the District of Columbia, and that Mr. Cole is alleged to have directed the obstruction from the D.C. Jail. *Id.* at 4, 7. As to the first argument, while the alleged location of trafficking may be relevant to venue in a case alleging a violation of section 1591(a), it does not directly relate to the relevant conduct elements, *see Rodriguez-Moreno*, 526 U.S. at 279, under section 1591(d). The same is true of the third argument, as the Government has failed to explain how that information relates to the essential conduct elements required to be proved for a conviction under section 1591(d). While these potentially could be relevant circumstance elements, they are not essential conduct elements that can establish venue. *See Auernheimer*, 748 F.3d at 533 (discussing distinction between essential conduct elements and circumstance elements and finding that only essential conduct elements may establish venue).

Furthermore, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has rejected the argument that the effects of alleged obstruction of justice on a case in a district can be sufficient to establish venue in that district when the underlying acts all occurred in another district. *See United States v. White*, 887 F.2d 267, 272 (D.C. Cir. 1989) ("[U]nder the controlling precedent of this circuit, venue for bribery lies only in a district in which the defendant committed unlawful acts and is not proper in a district where only the effects of the crime occur."); *United States v. Swann*, 441 F.2d 1054, 1054–55 (D.C. Cir. 1971) (finding that alleged tampering with witness in District of Columbia case was not sufficient to establish venue when acts constituting tampering occurred in Maryland); *see also United States v. Trie*, 21 F. Supp. 2d 7, 18 (D.D.C. 1998) ("The case law in this Circuit establishes that obstruction of justice is not a continuing

8

offense and that venue exists only in the district in which the acts constituting the offense took place."); *United States v. Moore*, 582 F. Supp. 1575, 1577 (D.D.C. 1984) (following *Swann* to dismiss case in which defendant, in Maryland, allegedly threatened witness in District of Columbia case in violation of 18 U.S.C. § 1512).  Although these cases did not involve section 1591(d), they involved analogous obstruction of justice and bribery provisions—18 U.S.C. § 1503 (1964) in *Swann*, 441 F.2d at 1055, and 18 U.S.C. § 201(c) (1982) in *White*, 887 F.3d at 272.

The Government does not challenge that the alleged acts underlying the essential conduct elements in this case all occurred in Maryland:  Mr. Gamble allegedly was found at Mr. Cole's residence in Maryland, Mr. Gamble allegedly removed items from Mr. Cole's house in Maryland, Mr. Gamble allegedly spoke with witnesses at Mr. Cole's residence in Maryland, and Mr. Gamble allegedly placed the items he removed from the residence in his car (driven from his residence in Maryland) in Maryland.  Gov't Opp'n at 1–3.

Under D.C. Circuit precedent and because the alleged essential conduct elements all occurred in Maryland, the Court agrees that venue is improper here for Count III.  *See, e.g.*, *Cabrales*, 524 U.S. at 8–10 (affirming Eighth Circuit's finding that counts alleging money laundering to cover up alleged drug trafficking scheme should have been dismissed for improper venue because essential conduct elements underlying money laundering all occurred in Florida, even though drug trafficking conspiracy was in Missouri); *Auernheimer*, 748 F.3d at 533–36 (finding that venue was improper on conspiracy and identity fraud counts because essential conduct elements did not occur in district in which trial was held); *United States v. Foy*, 641 F.3d 455, 467–68 (10th Cir. 2011) (citing *United States v. Kwong-Wah*, 924 F.2d 298, 302 (D.C. Cir. 1991)) (finding that venue was improper for attempt charge because there was "absolutely no evidence" that defendant had committed any act in that district, even where defendant had received

calls from alleged co-conspirator from that district); *United States v. Ramirez*, 420 F.3d 134, 140 (2d Cir. 2005) (finding that venue was improper for false statement count because underlying essential conduct elements occurred in other districts). Accordingly, the Court dismisses without prejudice Count III.

B. Motion to Transfer Counts I and II

Mr. Gamble also moves to transfer Counts I and II to the District of Maryland, as he argues that venue would also be proper in Maryland and that under Federal Rule of Civil Procedure 21, it would be in the interests of justice to transfer those counts. Def.'s Mot. at 5. While the Government opposed Mr. Gamble's Motion, it did not address specifically whether it consents to transfer of Counts I and II to the District of Maryland. The Government shall indicate by no later than **JULY 9, 2020** to the Court whether it opposes Mr. Gamble's request to transfer Counts I and II and, if it does oppose that request, shall provide the legal basis for its opposition. In the meantime, the Court shall hold in abeyance this portion of Mr. Gamble's Motion.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** Mr. Gamble's Motion to Dismiss for Improper Venue and to Transfer Venue, ECF No. 61. In particular, the Court **DISMISSES WITHOUT PREJUDICE** Count III of the Indictment and **HOLDS IN ABEYANCE** Mr. Gamble's Motion insofar as it seeks to transfer Counts I and II to the District of Maryland pending additional information from the Government.

An appropriate Order accompanies this Memorandum Opinion.

Dated: July 2, 2020

                                              /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge